[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ARTICULATION OF RULING ON A MOTION TO VACATE AN ORDER OF TEMPORARY CUSTODY
 Background
On May 6, 1998, Raiza and Josette S., eight and six year old daughters of Evalina Sa., made statements to their school personnel that their mother hit them with hangers, belts and fists, the eight year old also reporting having received a black eye from such a beating years earlier. Raiza also reported that CT Page 11429 her mother's live-in boyfriend, David V. father of their two-year-old half-brother, Dennis V., wrestles with her and her sister, touching her breast [sic] vaginal area and buttocks. In response to direct questions from the investigative social worker from the Department of Children and Families (DCF), Raiza offered the additional information that Dennis is also hit "hard" by her mother with her hand.
At 7:20 pm that same day, DCF secured a 96-hour administrative removal of all three children from their home under the authority of subsections (c) and (d) of Sec. 17a-101 of the Conn. Gen. Stats. (Rev. 1997) which permits such removal prior to any hearing when DCF ". . .has probable cause to believe that the child [reported as abused or any child in the householdis in imminent risk of physical harm from his surroundings andthat immediate removal from such surroundings is necessary toensure the child's safety . . ." [Emphasis added.] Within the 96 hours, the two girls were interviewed and videotaped by the St. Francis Sexual Abuse Clinic which confirmed the probable validity of their reports of inappropriate sexual behavior by their stepfather and inappropriate physical discipline by their mother. In the course of that interview, the inquiring social worker elicited the opinion of the two girls (whether as lay or expert is unclear) who stated that if their baby brother stayed at home their mother would hurt him. (See DCF social worker's affidavit on May 8, 1998.) On the strength of these interviews, DCF secured from the Superior Court, Juvenile Matters in Plainville an exparte Order of Temporary Custody (OTC) pursuant to subsection (b) of Sec. 46b-129.
After several brief hearings in the Plainville court, the matter was transferred for an expedited evidentiary hearing on the sustaining of the OTC to the Child Protection Session of the Superior Court, for Juvenile Matters in Middletown. On June 8, 1998, Evalina and David V. filed a motion to dismiss the case for failure to grant an evidentiary hearing on the OTC within ten days, as required by subsection (b) of Sec. 46b-129. Decision on this motion was deferred pending the evidentiary hearing that took place on June 9 and 11, with final arguments on June 12. On that date, the motion to dismiss for failure to grant the evidentiary hearing within the prescribed period was denied in a written ruling on the ground "that any claimed delay in these proceedings was of the respondents' own making." At the conclusion of testimony and argument, the court found, in an oral decision from the bench, that there was a preponderance of CT Page 11430 evidence that all three children were "in imminent risk of harm". The court ordered a transcript of the temporary custody trial, but no transcript was ever provided for the court file and, presumably, none was ever prepared, notwithstanding that order. Notes taken by the court clerk during the two day evidentiary hearing do not disclose any witnesses other than employees of DCF; and the St. Francis clinic to substantiate Raiza's uncorroborated allegation that her mother hit Dennis with her hand "hard". Nor did the court make any findings of fact to support the conclusion that Dennis, as well as his half-sisters, would be in imminent risk of physical injury[1] [emphasis added], or to articulate the nature of the "harm" that he was found to be at imminent risk of, if returned home to his parents. Whether such "harm" would come from being "hit' with his mother's hand, or being a witness to the sexual exposure and sexually inappropriate "wrestling" sessions between his father and his half-sisters was not delineated in these notes.
At the time of confirming the OTC, the court also granted DCF's oral motion for a psychological evaluation of all family members and their interactions. This was conducted by clinical psychologist Dr. Julia Ramos-Grenier on July 28 and 29, 1998, and her written reported submitted to the court on August 13. As a court-ordered document, it immediately became available to the court and counsel for all parties. ln that report, Dr. Ramos-Grenier, inter alia, concluded that:
 (1) while Raiza repeated to her that she had been hit by her mother with objects, "Raiza did not strike this evaluator as a credible reporter given her psychological/behavioral functioning at this time, the materials reviewed, the lack of corroboration of her statements by her sister, and the results of the present evaluation." (page 5).
 (2) Josette reported being hit by her mother, though never with objects, and "Josette does appear to be a credible reporter since she was consistent in her statements and does not show any significant emotional or personality dysfunction." (Id.)
 (3) Dennis was ". . . suffering emotional trauma at the separation from his mother and father . . ." (Id., p. 1.)
Dr. Ramos-Grenier concluded by recommending that Josette, as well as Dennis, return to the care of Evalina and David V. CT Page 11431
Notwithstanding the continuing obligation of all parties, but particularly DCF which had initiated the separation of these children from their parents, to bring to the court's attention any change in circumstances which diminished the imminency or any risk of physical injury justifying continuation of the OTC,.DCF did nothing to bring the psychologist's conclusions and recommendations immediately to the court's attention.
 In this situation the state cannot consitutionally "sit back and wait" for the parent to institute judicial proceedings. It "cannot . . . [adopt] for itself an attitude of `if you don't like it, sue.'" Duchesne v. Sugarman, 566 F.2d 817, 828 (2d Cir. 1977) cited with approval by Speziale, CJ, writing for a unanimous court in In Re Juvenile Appeal (83-CD), supra
at p. 291.
Consequently, the parents of Dennis V., on September 3, filed a Motion to Revoke or Dismiss the OTC on the two children Dr. Ramos-Grenier recommended returning home. Notwithstanding the requirements of the Practice Book[2]
no hearing on this motion had been scheduled prior to a judicial pretrial with the undersigned at Plainville on September 23, 1998. At that time, DCF expressed a willingness for both Josette and Dennis to be returned home but only after the parents admitted, or entered pleas of nolo contendere
to the allegations of physical abuse of all three children and sexual abuse of the girls. The parents were willing to enter such a plea to an allegation of uncared-for, within one of the definitions of Sec. 46b-120, but were unwilling to permit a negotiated plea to the allegations of abuse in view of pending criminal charges against both of them based upon the same alleged facts. This was not acceptable to the petitioner which would not agree to any adjudication except one based upon the allegations of physical and sexual abuse. All parties agreed that the matter would, therefore, have to proceed to trial, and to avoid repeating the two days of testimony offered in Middletown on June 9 and 11, 1998, (and since the Middletown court had made it clear that all testimony heard at the OTC trial could be used as evidence in a full neglect trial), the matter was referred back to Middletown to complete the full trial. Unfortunately, the judge who had heard the evidence in June and observed the videotape made by St. Francis as well as the demeanor of all witnesses, was not available to resume hearing this matter until January 4, 1999. This, at best, would result in the separation of two-year old Dennis from his parents, with whom Dr. Ramos-Grenier observed a warm, close and affectionate CT Page 11432 psychological parent-child bond, for another three months, extending from the already elapsed four and one-half months to nearly seven months.
 Changed circumstances
While the only source of belief that Dennis was at "imminent risk of physical injury" were the uncorroborated statements of his sisters that their mother spanked him on occasion, the sustaining of the OTC until a clinical professional could evaluate the imminency of harm should the family be reunited was well within the parameters of judicial discretion under these circumstances. The psychologist's conclusion that the two younger children would be at no risk of harm if returned home was, presumably, the basis for DCF's offer to send the children home under court-ordered Protective Supervision upon an adjudication of neglect. The stumbling block was that the parents, on the advice of counsel, were unwilling to permit an adjudication of abuse to enter since criminal charges were pending against both parents as a result of the disclosures to DCF in this case. While they were willing to permit an adjudication of "uncared-for" and submit to the conditions of Protective Supervision, DCF refused to accept any plea except to the alleged physical and sexual abuse. Since these positions appeared to be firmly established by both petitioner and respondent, it was clear that no adjudication would enter until after completion of a full trial starting in January of 1999.
Since the criterion for a OTC removal of "imminent risk of physical injury" and not the general best "interests" criteria that may be considered following an adjudication of neglect, it is the responsibility of the judicial authority to reexamine the continuing need to keep the child out of the home as the imminency or the risk changes. Since the confirmation of the OTC on June 12, 1998, the imminency of the risk o Dennis appears to have significantly diminished:
1) The only "reporter" who alleged that their mother hit Dennis "hard" was Raiza, found by the psychologist to be a less than credible reporter. No corroboration of any kind was offered that any physical discipline imposed by the mother on Dennis rose (or sank) to the level of abuse.
2) The parents have completed or engaged in all of the "steps" articulated by the court in May of 1998 necessary for the return CT Page 11433 of their children and are willing to submit to an adjudication that would permit court-ordered Protective Supervision to accompany the children back to their home.
3) Dr. Ramos-Grenier recommended the immediate return home of Dennis and Josette.
4) DCF itself would have terminated the OTC upon the entry of an adjudication of abuse, rather than uncared-for, indicating that any risk of injury was no longer imminent.
5) The parents, on the advice or their counsel, could not agree to an adjudication of abuse while criminal charges were pending.
Based upon the foregoing, the undersigned proposed terminating the OTC on the two children whom Dr. Ramos-Grenier recommended sending home, and who DCF agreed could go home upon an adjudication of abuse. The petitioner protested taking such action without a further evidentiary hearing. Because the Middletown CPS judge had heard evidence relating, to the abuse of Josette, to which the undersigned had had no access, the proposed return of Josette was reconsidered and suspended. There appeared no reason, however, why an evidentiary hearing was necessary for Dennis, for whom separation from home was more traumatic than for his sister, and whose "abuse" consisted of his half-sister's reports of his having been spanked by their mother. Whatever risk of physical injury would be presented by his return, could not be predicted to be either serious or imminent. The parties respondents are free to return to the judge in Middletown who confirmed the OFC on Josette, based upon testimony heard in June, with the changed circumstances delineated above and a request for Josette to be returned home prior to conclusion of the full trial which reconvenes in Middletown in January.
 Judgment
It is therefore ORDERED that the OTC granted on May 8, 1998, be terminated before the close of business on September 24, 1998, and that Dennis V. be returned to the custody of his parents and remain there until final disposition of the pending neglect petition regarding him, unless new circumstances are revealed that would support the conclusion that remaining there would place him at imminent risk of physical injury.
This order is entered without prejudice to the respondent CT Page 11434 parents to seek revocation of the OTC on Josette before the judge in Middletown who heard testimony relating to the imminency of risk of physical injury justifying continuation of temporary custody four months ago with their current motion based upon changed circumstances since June of 1998.
Judgement entered at Plainville September 23, 1998.
Articulation entered at Plainville October 8, 1998.
Frederica S. Brenneman, Judge